## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY COURTOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-133 RLW |
| | ) | |
| UNION PACFIC RAILROAD | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' joint Motion to Exclude or Limit the Testimony of Plaintiff's Expert, James Loumiet. (ECF No. 56). Also before the Court are separate motions for summary judgment filed by Defendants National Railroad Passenger Corporation ("Amtrak") and Union Pacific Railroad Company ("Union Pacific"). (ECF Nos. 58 and 61). After reviewing the parties' filings in support and opposition to Union Pacific's and Amtrak's motions for summary judgment, the Court ordered additional briefing from the parties regarding issues in dispute. The motions are now fully briefed and ripe for review. For the reasons that follow, Defendants' Motion to Exclude or Limit Plaintiff's Expert, Amtrak's Motion for Summary Judgment, and Union Pacific's Motion for Summary Judgment are granted in part and denied in part.

### I.      Factual and Procedural Background

This case arises out of a collision between a train and a motor vehicle that occurred on August 19, 2019, outside Mineral Point, Missouri. According to the Second Amended Complaint ("Complaint"), Plaintiff Courtois was driving a 2007 Freightliner dump truck in a westerly direction toward a railroad crossing known as the North Oak Road crossing. At the time, an Amtrak train was headed in a south-bound direction on tracks owned by Union Pacific. Plaintiff

alleges he was unaware that the Amtrak train was approaching "because excessive brush or other vegetation alongside the tracks precluded Plaintiff from seeing the approaching train until his vehicle was in the zone of danger of the railroad crossing."  (ECF No. 17 at 2).  Plaintiff alleges that he drove his vehicle onto the tracks located at the crossing and was struck by the train.

Plaintiff brings the following state-law claims against the two defendants: negligence against Union Pacific (Count I); negligence per se against Union Pacific (Count II); and negligence against Amtrak (Count III).  Plaintiff claims Union Pacific was negligent in that it failed to: remove, clear, or control the overgrown vegetation; properly maintain the crossing; warn of the dangerous condition; and/or issue slow orders at the crossing. Plaintiff claims Amtrak was negligent in that it failed to: remove, clear, or control the overgrown vegetation; properly maintain the crossing; warn of the dangerous condition; issue slow orders at the crossing; sound the train's horn in a timely and safe manner; and/or travel at a speed safe for the conditions.  Plaintiff seeks damages, including medical expenses, and lost and future wages.

During discovery, Plaintiff disclosed James Loumiet as an expert.  Defendants jointly move, pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), to limit or exclude Mr. Loumiet's testimony.  Defendants contend that Mr. Loumiet's opinions regarding the crossing's dangerousness should be excluded under both federal and Missouri law.  Defendants further argue that Mr. Loumiet's opinions are flawed because he considered non-relevant factors in forming his opinions, and his opinions are based on the wrong standard of care and lack adequate foundation.

Defendants also filed separate motions for summary judgment.  Union Pacific moves for the entry of summary judgment as to Counts I and II.  With regard to Count II, negligence per se, Union Pacific argues that the statute on which this claim is based applies to public crossings only, and the North Oak Road crossing is a private crossing.  As to Count I, negligence, Union Pacific

argues that failure to remove obstructing vegetation at a private railroad crossing is insufficient to establish a cause of action for negligence under Missouri law, and any claim concerning slow orders is preempted by federal law.  Union Pacific further argues that Plaintiff's failure to stop and look was in violation of his duty to exercise the highest degree of care and was the collision's sole proximate cause.

Amtrak argues that it is entitled to summary judgment as to Count III, negligence, for the following reasons: (1) a claim based on the theory that the train was traveling at an excessive speed is preempted by federal law; (2) Amtrak had no responsibility with regard to the design, maintenance, or signaling at the crossing; and (3) Amtrak had no duty to sound a warning at the private crossing but, in any event, it is undisputed that Amtrak did sound a horn.

Plaintiff responded to the three motions.  Plaintiff concedes that his claim that the train was traveling at an excessive speed is preempted by federal law, but argues that in all other respects, the motions should be denied.

## II.       *Motion to Exclude or Limit Expert Testimony*

The Court will first address Defendants' Motion to Exclude or Limit Expert Testimony. During discovery in this case, Plaintiff disclosed James Loumiet, who holds himself out to be an expert in the field of railroad crossings and accident reconstruction.  Defendants move to exclude or, in the alternative, to limit Mr. Loumiet's testimony.

The parties have submitted an extensive evidentiary record, which includes Mr. Loumiet's expert report, curriculum vitae, deposition transcripts, and other exhibits.  The Court finds that it can make a proper Daubert determination without the need for an evidentiary hearing or oral argument.  Miller v. Baker Implement Co., 439 F.3d 407, 412 (8th Cir. 2006) (district court need not hold a Daubert hearing where parties have opportunity to present argument and evidence before ruling on the motion).

3

### A.    Legal Standard

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702.  Lauzon v. Senco Prod., Inc., 270 F.3d 681, 686 (8th Cir. 2001).  The proponent of the expert testimony in question, here Plaintiff, has the burden to establish its admissibility by a preponderance of the evidence.  Id.  The district court is "vested with a gatekeeping function, ensuring that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  Union Pac. R.R. Co. v. Progress Rail Servs. Corp., 778 F.3d 704, 709 (8th Cir. 2015) (quoting Daubert, 509 U.S. at 589).

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Civ. P. 702.  The proposed expert testimony must meet three prerequisites in order to be admissible.  First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  In other words, the evidence must be relevant.  Lauzon, 270 F.3d at 686 (citing 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[3] (2001)).  Second, "the proposed witness must be qualified to assist the finder of fact."  Id.  Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the

assistance the finder of fact requires." Id. See also Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir. 2010); Khoury v. Philips Med. Sys., 614 F.3d 888, 893 (8th Cir. 2010).

### B.    Background

Mr. Loumiet has a degree in mechanical engineering with over 37 years of professional experience, including 34 years in accident reconstruction. He personally inspected the North Oak Road crossing and took measurements and photographs. He also reviewed a number of documents, including crash reports, photographs, and a video of the collision taken from the locomotive.

Mr. Loumiet prepared an expert report. In his report, Mr. Loumiet noted, among other things, that there were sight-restricting trees and vegetation in all four crossing quadrants of the North Oak Road crossing. He analyzed the grade of the road leading to the crossing and noted it had a humped profile and steep uphill grade on the east approach, the direction from which Plaintiff approached the crossing. He also analyzed the topography of the crossing and noted the roadway was curved west of the crossing, and the tracks were curved through and around the crossing on both sides. Further, Mr. Loumiet observed that the grade crossing traffic control consisted of stop signs and private crossing signs. According to Mr. Loumiet's expert report, he will offer testimony that the North Oak Road crossing was extrahazardous at the time of the collision due to the following: "(1) unusually restricted track sight distance caused by the sight-restricting trees and vegetation and the track curve, (2) the humped vertical profile and steep roadway approach east of the tracks, (3) unsafe traffic control, and (4) the use of the crossing by large trucks and passenger trains." (ECF No. 57, Ex. 2 at 5). In addition, Plaintiff disclosed that Mr. Loumiet will opine that the extrahazardous nature of the North Oak Road crossing was a causative or contributing factor in the subject collision. (ECF No. 79, Ex. 3).

In their motion, Defendants do not challenge Mr. Loumiet's qualifications, but rather argue that his opinions should be excluded because, under relevant case law, experts are prohibited from testifying as to the dangerousness of a railroad crossing.  Defendants further argue that Mr. Loumiet's opinions are inadmissible because they would usurp the role of the jury as factfinder. In addition, Defendants argue that in offering his opinions, Mr. Loumiet mischaracterized the duties of a Missouri driver, made improper conclusions of law, and relied on factors that had no bearing on the collision, as well as materials that have not been adopted for use under Missouri law.

### C.      Discussion

In general, "a crossing is extrahazardous when the circumstances are such that a railroad can reasonably anticipate that a person exercising ordinary care would nevertheless be subjected to the likelihood of injury." Lohmann ex rel. Lohmann v. Norfolk & W. Ry. Co., 948 S.W.2d 659, 667 (Mo. Ct. App. 1997) (citing Carson v. Thompson, 161 S.W.2d 995 (Mo. Ct. App. 1942)). When evidence is presented to make such a finding, it is for the factfinder to determine "whether, under the circumstances, the means used were sufficient to constitute due care."  Id.  Plaintiff disclosed that Mr. Loumiet will offer the opinion that based on number of factors, the crossing at issue is extrahazardous, and certain characteristics of the crossing caused or likely contributed to the collision in this case.

Citing a number of state and federal cases, Defendants argue that courts have "consistently recognized" an expert may not testify that a crossing is unusually dangerous or extrahazardous. (ECF No. 57 at 3).  As an initial matter, this case was removed to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. All of Plaintiff's claims are state law claims, and because the collision occurred in Missouri, there appears to be no dispute that Missouri law applies to substantive issues in this case.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). That

said, the Court is to apply federal law to determine the admissibility of expert testimony. Johnson v. Friesen, 79 F.4th 939, 943 (8th Cir. 2023).  While the Court must look to Missouri law for substantive issues, such as the elements of the claims and what Plaintiff would be required to prove at trial, state court cases are not controlling as to the admissibility of expert testimony in federal court.  Id.

In support of their argument that experts are prohibited from testifying that a crossing is unusually dangerous or extrahazardous, Defendants cite two Eighth Circuit cases, which are controlling in this case.  However, the two cases do not hold that an expert is prohibited from testifying that a crossing is extrahazardous and, moreover, are factually distinguishable from the case at bar.

First, Defendants cite Lusby v. Union Pacific Railroad Co., 4 F.3d 639 (8th Cir. 1993), a case involving a train collision in Arkansas.  The plaintiff in Lusby claimed that the railroad breached its common law duty under Arkansas law to provide special warnings at an abnormally dangerous crossing.  To show the crossing was abnormally dangerous, the plaintiff introduced the opinion testimony of a traffic engineering expert at trial. Id. at 641. The railroad appealed the verdict in plaintiff's favor, and the Eighth Circuit held that admission of the expert's testimony was reversible error because his opinion was based on materials that should have been excluded under a federal statute.  Id.  More specifically, in forming his opinion, the traffic engineer reviewed records from the Arkansas State Highway and Transportation Department (AHTD) of vehicle count, train traffic, and earlier accidents at the crossing.  Id. The Eighth Circuit determined that the AHTD records had been compiled pursuant to 23 U.S.C. § 130(d) for the purpose of complying

with a federal program of enhancing safety at crossings.[1]  As such, the materials should not have

been used in private litigation under 23 U.S.C. § 409.[2]  Id.  See also Robertson v. Union Pac. R.R.

Co., 954 F.2d 1433, 1435 (8th Cir. 1992) ("Other courts have recognized that the underlying intent

of the statute is to facilitate candor in administrative evaluations of highway safety hazards [ ] and

to prohibit federally required record-keeping from being used as a tool [ ] in private litigation.")

(quotations and citations omitted).  Notably, the Eighth Circuit in Lusby did not hold that it is

impermissible for an expert to testify that a crossing was unusually dangerous or extrahazardous.

In fact, the court wrote that the expert's testimony would have been admissible if he had relied on

data that he had compiled himself or obtained from other sources. But because he impermissibly

based his opinion on data the state had gathered and submitted to the federal government pursuant

to 23 U.S.C. § 130(d), the district court erroneously admitted his testimony. Lusby, 4 F.3d at 641.

Here, Defendants do not contend that in reaching his opinions Mr. Loumiet impermissibly relied

on data that should be excluded pursuant to 23 U.S.C. § 407.  Contrary to the Defendants'

---

[1]Section 130(d) provides as follows:

Survey and schedule of projects. – Each State shall conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose. At a minimum, such a schedule shall provide signs for all railway-highway crossings.

23 U.S.C. § 130(d).

[2]The statute provides:

[R]eports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of . . . railway-highway crossings, pursuant to [23 U.S.C. § 130] . . . shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. § 407 (effective Nov. 15, 2021, § 409 transferred to § 407).

argument, the decision in Lusby supports Mr. Loumiet testifying as to the dangerousness of the North Oak Road crossing.

The other Eighth Circuit case Defendants cite, Henderson v. United States, 965 F.2d 1488 (8th Cir. 1992), which was decided prior to Daubert, does not address the admissibility of opinion testimony as to the dangerousness of a railroad crossing.  Rather, the case involved a recreational fisherman who was carried away by water released from a dam operated by the Army Corps of Engineers.  On appeal, the Eighth Circuit reversed the entry of summary judgment and held there was a genuine issue of material fact as to whether the release of water through the dam was an ultrahazardous activity under a Missouri statute.  Id. at 1495.  In short, the case is inapplicable to admissibility of Mr. Loumiet's testimony.  Defendants' argument that caselaw prohibits an expert from testifying that a crossing was unusually dangerous or extrahazardous is unsupported and without merit.

Defendants further argue that Mr. Loumiet's opinions are not the proper subjects for expert testimony because a "car accident" is not something that is beyond the comprehension of lay jurors, especially when the accident was captured on a video recording that will be presented to the jury. (ECF No. 57 at 9-10). First, the Court does not agree with Defendants' characterization that the collision at issue in this case is a mere "car accident."  It was a collision between a dump truck and a passenger train at a rural railroad crossing.  The Court considers that an average juror would have little to no experience driving a dump truck, operating a train, and/or maintaining a railroad crossing.  Second, Federal Rule of Evidence 702 permits a qualified expert to give opinion testimony if the expert's specialized knowledge would allow the jury to better understand the evidence or decide a fact in issue. Lee v. Andersen, 616 F.3d 803, 808 (8th Cir. 2010).  "The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." Id. (quoting McKnight ex rel. Ludwig v. Johnson Controls, Inc., 36 F.3d 1396, 1408

(8th Cir. 1994)). Information about railroad industry standards and the topographical characteristics of a railroad crossing that impact safety – such as specific sight distances, track angles, road curvatures, and the road grades – are outside the general knowledge of laypersons, and opinion testimony as to why these factors might have contributed to the collision may assist the jury in reviewing the facts and deciding whether the parties met their respective duties of care in this case. See Tweedle v. State Farm Fire & Cas. Co., 202 F. App'x 934, 936 (8th Cir. 2006) (district court has broad discretion in determining whether expert testimony is necessary to assist jury's understanding of the evidence or determination of the facts in issue); Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 310 (8th Cir. 1997) ("We do not believe that the trial court erred in concluding that the [expert's] testimony would assist the jury in determining whether the crossing was reasonably safe.").

Defendants further argue that Mr. Loumiet should be prohibited from testifying because he improperly concluded that Plaintiff acted reasonably at all times which, according to Defendants, is in direct contravention to the heightened duty Missouri places upon motorists at grade crossings. Defendants argue that in forming his opinion, Mr. Loumiet "attempted to increase the railroad's legal duties while diminishing those of the driver." (ECF No. 57 at 5). Defendants point to the fact that Mr. Loumiet does not fault Plaintiff's actions "in any respect as a causative factor in this accident," and "seemingly ignores a Missouri driver's duties and purports to impose on the railroad a far greater duty, namely to design a crossing for the benefit of a driver who disobeys [his] legal obligations to approach a crossing while exercising the highest degree of care." (Id. at 6).

As stated in his report, Mr. Loumiet was assigned "to evaluate the safety of the North Oak Road grade crossing and determine any role it had in the collision." (ECF No. 57, Ex. 2 at 2). He examined the physical characteristics of the crossing and is being offered to give testimony as to how these characteristics impact a driver's ability to traverse the crossing safely. Mr. Loumiet's

opinions go to the issue of whether there were **circumstances at the crossing such that the Defendants could have been "reasonably anticipated" that "a person exercising ordinary care would nevertheless be subjected to the likelihood of injury."** Lohmann, 948 S.W.2d at 667.

It is clear from the briefing that the parties disagree as to what duties of care Plaintiff owed as the driver of the truck under Missouri law, but the Court need not address this issue to resolve Defendants' Daubert motion. Mr. Loumiet is not being offered to testify as to whether Plaintiff satisfied his legal duties as a driver on the day of the collision. He is being offered to testify as to the safety of the crossing. Furthermore, Mr. Loumiet will be subject to cross examination at trial, and Defendants may pose questions relevant to Plaintiff's conduct that day, for example, how far down the tracks a driver is able see at various points on the approach to the crossing, including from the stop sign. The Court will not exclude Mr. Loumiet's testimony based on Defendants' argument that the expert purportedly minimized or ignored Plaintiff's duty of care.

In sum, the Court will not exclude Mr. Loumiet as an expert in this case. Plaintiff has shown that Mr. Loumiet is qualified in the fields of railroad crossings and accident reconstruction, and will offer reliable testimony based on his own observations and expertise that will assist the jury in evaluating the relevant facts at issue in this case.

Defendants also argue that if Mr. Loumiet is allowed to testify, his testimony should be limited. Defendants argue Mr. Loumiet improperly relied on factors that had no bearing on the particular collision in question. They point to the fact that he examined the sightlines and conditions in all four quadrants of the crossing, although Plaintiff was approaching from the east, and the train was approaching from the south. Citing to a 1986 decision from the Missouri Court of Appeals, Hendricks v. Missouri-Kansas-Texas Railroad Co., 709 S.W.2d 483, 486 (Mo. Ct. App. 1986), Defendants argue that only the sight restrictions in the southeast quadrant are relevant

to this case, and testimony regarding other quadrants should be excluded, because the conditions of the other quadrants could have no bearing on the cause of the collision.

A more recent Missouri Supreme Court decision involving a train and motor vehicle collision holds otherwise.  In Alcorn v. Union Pacific Railroad Co., the Missouri Supreme Court rejected as too restrictive the railroad's argument that it could not be held liable because it did not have actual or constructive knowledge that the crossing was unusually dangerous from the northwest quadrant. 50 S.W.3d 226, 238 (Mo. 2013) (en banc), overruled on other grounds by Badahman v. Catering St. Louis, 395 S.W.3d 29 (Mo. 2013) (en banc).  The Missouri Supreme Court found that evidence of sight restrictions at the crossing in general, even in the quadrants the plaintiff did not encounter, was relevant in determining whether the crossing was unusually dangerous under Missouri law.  Id.  In upholding the jury's verdict in plaintiff's favor, the court wrote: "There was ample evidence of sight limitations at the [ ] crossing, which is certainly a general type of harm, and the jury could have concluded that Union Pacific had actual or constructive notice that the crossing was unusually hazardous."  Id.  Mr. Loumiet may offer an opinion as to the dangerousness of the North Oak Road crossing based on sight distances in each of the four quadrants of the crossing.

Defendants also argue that Mr. Loumiet's testimony should be limited because he improperly relied on a sight distance table from the American Association of State Highway and Transportation Officials ("AASHTO"), "a source Missouri law has never adopted with regard to railroad crossings," and which Defendants contend applies to new crossings and not existing ones. (ECF No. 57 at 6-7).  The AASHTO guidelines are the product of an industry group and reflect industry standards.  While industry standards do not carry the weight of law, they are often used by expert witnesses and can "provide a framework to assess whether [a defendant] breached its duty of care [ ]." Ray v. Wal-Mart Stores, Inc., 120 F.3d 882, 884 (8th Cir. 1997). Furthermore,

12

the Missouri Supreme Court has approved the use of AASHTO's sight distant guidelines as evidence at trial to show a railroad had actual or constructive knowledge that a crossing was unusually hazardous. <u>Alcorn</u>, 50 S.W.3d at 238.

Finally, Defendants argue that Mr. Loumiet should be precluded from offering testimony that Union Pacific violated Missouri Revised Statutes § 389.665(2), which pertains to the clearing of vegetation at public crossings.  As discussed below, the Court finds that § 389.665(2) is not applicable to this case, because the North Oak Road crossing is not a public crossing within the meaning of the statute.  Consequently, the Court grants Defendants' <u>Daubert</u> motion to the extent that Mr. Loumiet will be prohibited from offering testimony that Union Pacific violated Missouri Revised Statutes § 389.665(2).  In all other respects, Defendants' Motion to Exclude or Limit the Testimony of James Loumiet is denied.

### III.  Motions for Summary Judgment

The Court will now take up the Defendants' motions for summary judgment.

### A.    Legal Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The substantive law determines which facts are critical and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. <u>Id.</u>  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Id.</u>

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "The nonmoving party may not rely on allegations or denials," but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture." Carter v. Pulaski Cnty. Special Sch. Dist., 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting Ball v. City of Lincoln, Neb., 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)). "Small factual disputes about the underlying events . . . could only create the 'metaphysical' kind of doubt that the Supreme Court decried in Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)." Main v. Ozark Health, Inc., 959 F.3d 319, 327 (8th Cir. 2020) (cleaned up; quoted case omitted).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving Union Pacific's and Amtrak's Motions for Summary Judgment.

## B.     Undisputed Facts

On August 19, 2019, Plaintiff was involved in a grade crossing collision with an Amtrak train.  The crossing at issue, the North Oak Road crossing, is near Plaintiff's home outside Mineral

Point, Missouri.  Plaintiff testified that on the east side of the tracks, a gravel road leads up to the North Oak Road crossing.  (ECF No. 63, Ex. 3 at 4).  While the gravel road connects a horse farm and multiple homes, the road is privately owned and on private property. (Id.)  The private property adjacent to the crossing was owned by Plaintiff's parents, who are deceased, and as of the date of Plaintiff's deposition on August 1, 2022, was held in a Courtois family trust.  (Id. at 3-5, 8-9).  Only members of the Courtois family live in the four homes on the east side of the tracks, and there is no other road leading in or out of the property.  (Id.)  On the other side of the tracks, on the west side, is North Oak Road, which connects to Highway 8.  (Id. at 3).  Plaintiff, who has lived near the North Oak Road crossing for decades, had driven over the crossing hundreds if not thousands of times before the date of the collision.

There is a stop sign on the east side of the North Oak Road crossing.  At his deposition, Plaintiff testified that he "sometimes" comes to a complete stop before entering the crossing but "[n]ot all the time" because "[w]ith a dump truck, it's easier to keep a little bit of momentum so I can cross [the tracks]."  (Id. at 15).  Plaintiff admits that before the collision, he did not come to a full and complete stop at the stop sign.

It is undisputed that prior to impact, the Amtrak train sounded a horn and whistle.  There appears to be a dispute of fact, however, as to when Amtrak sounded the horn.

C.     Discussion

1.     Negligence per se

Defendant Union Pacific moves for summary judgment on Plaintiff's claim for negligence per se in Count II.  A claim for negligence per se is based on a violation of a statute, and the issue for the finder of fact is whether the defendant's violation of the statute was the proximate cause of the plaintiff's injuries.  Sill v. Burlington N. R.R., 87 S.W.3d 386, 392 (Mo. Ct. App. 2002).  To establish a claim for negligence per se, Plaintiff must show: (1) a violation of a statute; (2) the

injured person was a member of the class of persons intended to be protected by the statute; (3) the injury complained of was the kind the statute was designed to prevent; and (4) the violation of the statute was the proximate cause of the injury.  Id.  In his Complaint, Plaintiff alleges Union Pacific failed to adequately clear the vegetation at or near the North Oak Road crossing in violation of Missouri Revised Statute § 389.665(2).

Section 389.665(2) imposes a duty on railroads to control vegetation for a distance of 250 feet from public crossings.  More specifically, the statute provides:

> It shall be the duty of every corporation or person owning or operating any railroad or branch thereof in this state to maintain the right-of-way at public grade crossings so that it will be reasonably clear of vegetation, undergrowth or other debris for a distance of two hundred fifty feet each way from the near edge of such crossings where such things would materially obscure approaching trains from the view of travelers on the highway.

Mo. Rev. Stat. § 389.665(2).

In moving for summary judgment, Union Pacific argues it cannot be held to have violated this statute, because it is undisputed that the North Oak Road crossing was not a "public grade crossing."  Plaintiff concedes that the statute only applies to public crossings but argues the determination of whether a crossing is public or private is an issue of fact, and there remain fact disputes as to the nature of the North Oak Road crossing.

The parties agree that Missouri's Code of State Regulations Title 7, Section 265-8.005, defines public railroad crossings under Missouri law and is controlling here.  The regulation provides as follows:

> (14)   Public crossing - a highway or pathway that crosses one (1) or more railroad tracks, either at-grade or grade separated, where the highway/pathway approaches to the crossing are under the jurisdiction of, and maintained by, a public authority and open to public travel. All of the approaches must be under the jurisdiction of the public authority and no approach may be located on private property.

Mo. Code Regs. Ann. tit. 7, § 265-8.005(14).[3]  The undisputed evidence in the record is that the gravel road approaching the North Oak Road crossing from the east is privately owned.  It is also undisputed that the gravel road is located on private property owned by the Courtois family.  It is unclear if the property was owned at the time of the collision by one or both of Plaintiff's now-deceased parents, or in a Courtois family trust, but there is no evidence the gravel road was under the jurisdiction of or maintained by a public authority.

Plaintiff argues there are characteristics about the North Oak Road crossing that suggest it may be public.  For example, Plaintiff points to the fact that the road leads to multiple homes and a horse farm.  However, the houses and farm are all under the same private ownership.  Plaintiff also asserts that vehicles other than Courtois family vehicles use the road.  But Plaintiff points only to the fact that, during his inspection, Mr. Loumiet observed one FedEx truck making a delivery to the Courtois property.  In general, delivery truck drivers are invitees, who enter private property with the express or implicit consent of the property owner.  Ford v. Ford Motor Co., 585 S.W.3d 317, 332 (Mo. Ct. App. 2019); Spencer v. Crow Enters., Inc., 636 S.W.2d 369, 371 (Mo. Ct. App. 1982). The presence of one delivery truck is not evidence that the gravel road was open to public travel within the meaning of the Missouri regulation.

Viewing the evidence in a light most favorable to Plaintiff, no reasonable jury could conclude that the North Oak Road crossing was public.[4]  Consequently, the Court finds as a matter

---

[3]The code defines private crossings as:

(13)   Private crossing - a highway-rail or pathway crossing, either at-grade or grade separated, that is not a public crossing because the crossing is privately owned and intended for use solely by the owner and/or the owner's licensees and invitees.

Mo. Code Regs. Ann. tit. 7, § 265-8.005(13).

[4]Union Pacific and Amtrak both argue that undisputed evidence establishes the North Oak Road crossings is private.  In support of their argument, Defendants point to Crossing Inventory

of law that Missouri Revised Statute § 389.665(2), which imposes a duty on railroads to control vegetation for a distance of 250 feet from public crossings, does not apply to the crossing at issue, and Union Pacific is entitled to summary judgment as to Count II for negligence per se.

2.   <u>Negligence as to Union Pacific</u>

Union Pacific also moves for summary judgment as to Count I, negligence.  To make a claim of common law negligence against a defendant, a plaintiff must show the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, the defendant's failure proximately caused injury to the plaintiff, and the plaintiff suffered damages.  <u>Lopez v. Three Rivers Elec. Co-op., Inc.</u>, 26 S.W.3d 151, 155 (Mo. 2000) (en banc); <u>Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.</u>, 700 S.W.2d 426, 431 (Mo. 1985) (en banc).  In his Complaint, Plaintiff claims Union Pacific was negligent in that it failed to remove, clear, or control overgrown vegetation; properly maintain the crossing; warn of the dangerous condition; and/or issue slow orders at the crossing.  Union Pacific argues Plaintiff's theories of negligence fail as a matter of law.

a.   *Slow orders*

Union Pacific argues it is entitled to judgment as a matter of law for any claim of negligence based on the theory that it failed to issue "slow orders" at or near the North Oak Crossing.  Union Pacific contends that a negligence claim based on the failure to issue slow orders is an attempt to

---

Forms from the Federal Railroad Administration ("FRA") of the U.S. Department of Transportation ("DOT"), which indicate the North Oak Road crossing is private.  Plaintiff argues the DOT Crossing Inventory Forms were compiled pursuant to 23 U.S.C. § 130 and, therefore, are inadmissible under 23 U.S.C. § 407.  <u>Lusby v. Union Pac. R.R. Co.</u>, 4 F.3d 639 (8th Cir. 1993); <u>Robertson v. Union Pac. R. Co.</u>, 954 F.2d 1433, 1435 (8th Cir. 1992).  The Court need not decide whether the DOT Crossing Inventories are admissible under § 407, because it finds other factors, such as ownership, use, and maintenance, are determinative as to the nature of a railroad crossing under Missouri law.  Mo. Code Regs. Ann. tit. 7, § 265-8.005(13) and (14).  <u>See also</u> <u>Gulf, M. & O. R. Co. v. Thornton</u>, 294 F.2d 104 (8th Cir. 1961); <u>Flint v. Chicago, Burlington & Quincy R.R. Co.</u>, 207 S.W.2d 474, 475 (Mo. 1947).

assert a speed-related claim, which it asserts is preempted by federal law.  Plaintiff concedes this argument.  Therefore, any claim of negligence against Union Pacific based on its alleged failure to issue slow orders is dismissed.

b.   *Duty to clear vegetation*

Plaintiff's claim of negligence is also based on Union Pacific's alleged failure to clear the North Oak Road crossing of vegetation.  Union Pacific argues Plaintiff's negligence claim fails because it was under no duty to clear vegetation.  As discussed above, Missouri Revised Statutes § 389.665(2) does not apply in this case because the North Oak Road crossing is not a public crossing.  Therefore, the issue before the Court is whether Union Pacific had a common law duty to control vegetation at a non-public crossing.  Union Pacific argues it did not, citing Honeycutt v. Missouri Pacific Railroad Co., 440 S.W.2d 481 (Mo. 1969).  Union Pacific contends the Missouri Supreme Court has definitely decided that there is no common law duty to control vegetation at a private crossing.  The Court does not agree.

Honeycutt involved a collision at a railroad crossing located on a private road on a farm. Id. at 482.  The case went to trial and there was a verdict in favor of the plaintiff and against the railroad.  On appeal, the railroad argued that the plaintiff failed to submit a cause of action because it was under no duty to keep a private crossing clear of vegetation.  In its review, the Missouri Supreme Court analyzed a number of cases involving private railroad crossings and quoted with approval the following from one of its earlier decisions:

> [A] railroad is bound to exercise reasonable care in the operation of its train and to avoid injury to persons and animals at all crossings, private as well as public; and if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen, ordinary prudence would require an alarm or signal to be given by an approaching train, then its omission is negligence. The question is one for the jury to determine on common law principles.

19

Id. at 485 (quoting <u>Boland v. St. Louis-San Francisco Ry. Cl.</u>, 284 S.W. 141, 145 (Mo. 1926)). The Missouri Supreme Court held, contrary to the defendant railroad's assertion, that a railroad does owe some duty of care at so-called private crossings.  <u>Id.</u>  That said, the court reversed the jury verdict because the two theories of liability on which the plaintiff's claims were submitted to the jury were based <u>solely</u> on overgrown vegetation. According to the Missouri Supreme Court, overgrown bushes and vegetation "are circumstances to be considered with other factors, but standing alone at a private crossing [ ] are not sufficient [ ] to sustain a cause of action." <u>Id.</u> at 486. The court noted, however, that under the facts of the case there were "possible bases for liability" under controlling law and remanded the case.   <u>Id.</u>

Here, Plaintiff is not proceeding under a theory of overgrown vegetation alone.  Plaintiff alleges, and his expert will offer an opinion, that the collision was the result of a number of factors, including the obstructive vegetation, the reduced sight lines caused by the curve of the track, the slope and steep grade of the roadway, and the passive signalization, as well as the train's failure to give adequate warning on its approach.  Union Pacific's argument regarding its common law duty to maintain vegetation is without merit.  Under Missouri common law, overgrown vegetation can be considered in conjunction with other factors in determining whether a railroad exercised reasonable care at a non-public crossing.[5] <u>Id.</u>

---

[5] Union Pacific contends that to the extent Plaintiff argues it had a duty to upgrade the signalization at the North Oak Road crossing, Plaintiff's claim fails because Missouri law vests the Missouri Department of Transportation with the exclusive power to regulate railroad crossing signals.  Plaintiff responds that he is not pursuing a claim based on a theory that Union Pacific should have replaced the signals at the crossing, but rather he contends that signalization, in conjunction with other characteristics of the crossing, is relevant as to Union Pacific's knowledge about the dangerousness of the crossing and the duty of care it owed Plaintiff.

c.    *Comparative negligence and proximate cause*

Union Pacific also moves for summary judgment arguing that the undisputed evidence establishes that Plaintiff's conduct was the sole and proximate cause of the collision.  Union Pacific argues that Plaintiff failed to exercise the highest degree of care when negotiating the crossing, in that he failed to stop at the stop sign to ascertain that a train was not approaching.  Union Pacific contends Plaintiff was in violation of Missouri's traffic laws and is precluded from recovering under a theory of negligence.

Comparative fault applies to negligence actions in Missouri.  In Gustafson v. Benda, 661 S.W.2d 11 (Mo. 1983) (en banc), the Missouri Supreme Court abolished contributory negligence as a complete bar to a plaintiff's recovery in negligence cases and adopted a comparative fault system.  Therefore, in general, negligence by a plaintiff will not bar completely his or her claim, if the plaintiff can demonstrate that the defendant's negligence also contributed to the cause of the plaintiff's injury.  Id. at 19.  In other words, a plaintiff's negligence reduces but does not eliminate his or her recovery. Instead, damages are apportioned according to the proportionate fault of the parties.  Id. Notably, the cases Union Pacific cites in support of its argument that Plaintiff is precluded from recovery on account of his own negligence date prior to the adoption of comparative fault in Missouri.

Plaintiff acknowledges that he is proceeding under a theory of comparative negligence.  He argues that even if he failed to come to a complete stop at the stop sign, Union Pacific's negligence in failing to maintain a safe crossing contributed to the collision as well. Plaintiff argues Union Pacific should be held liable for some or all of the injuries he incurred and the damages he sustained.

The Court finds Plaintiff is not precluded from proceeding on a theory of negligence despite the fact that he did not come to a complete stop at the stop sign.  In a number of Missouri

cases, the issue of comparative negligence was submitted to the jury where the plaintiff failed to stop at a stop sign before negotiating a railroad crossing.  See, e.g., Beal v. Kansas City S. Ry. Co., 527 S.W.3d 883, 887 (Mo. Ct. App. 2017) (reversing the entry of summary judgment where the railroad argued the plaintiff's failure to stop was the sole cause of the collision); Eckelkamp v. Burlington N. Santa Fe Ry. Co., 298 S.W.3d 546, 552–53 (Mo. Ct. App. 2009) (approving comparative fault instruction that included allegations of negligence by the decedent for failing to stop at crossing as required by statute); Roy v. Mo. Pac. R.R. Co., 43 S.W.3d 351, 362–63 (Mo. Ct. App. 2001) (upholding use of comparative fault instruction based on plaintiff's alleged failure to stop at a stop sign at the crossing); Mott v. Mo. Pac. R. Co., 926 S.W.2d 81, 86 (Mo. Ct. App. 1996) (the plaintiff's negligence in failing to stop at the railroad crossing versus the railroad's negligence in failing to clear vegetation was a matter for the jury under Missouri's comparative fault law). See also Vandergriff v. Mo. Pac. R.R., 769 S.W.2d 99, 103-04 (Mo. 1989) (en banc) (approving the defendant's proposed comparative fault jury instruction, which included alleged negligence by the plaintiff in failing to stop at crossing).  Union Pacific's argument that Plaintiff's failure to come to a complete stop at the stop sign forecloses his negligence claim against the railroad is without merit under Missouri case law.

The Court further finds that Union Pacific's argument is not supported by the undisputed facts. Plaintiff contends that even if he had stopped at the stop sign, he would not have seen the train in time to cross the tracks safely.  Union Pacific disputes this assertion and in its Reply points to evidence including testimony from its expert, who purportedly testified that "had Plaintiff simply stopped his vehicle at the crossing in accordance with the stop sign the accident could not and would not have happened."  (ECF No. 71 at 5).  This evidence, however, was not included in Union Pacific's Statement of Material Facts in support of its summary judgment motion, or Plaintiff's response thereto. Union Pacific has not shown this evidence is undisputed and has failed

to meet its burden to show that there are undisputed facts as to what caused the collision in this case.  Whether Plaintiff's negligence was the sole cause of the collision, as Union Pacific contends, is a matter for the jury to determine in this case.

In sum, the Court grants Union Pacific's Motion for Summary Judgment as to Plaintiff's claim in Count II for negligence per se based on Missouri Revised Statutes § 389.665(2).  Plaintiff is also precluded from pursuing a theory of negligence in Count I based on Union Pacific's alleged failure to issue slow orders.  In all other respects, Union Pacific's Motion for Summary Judgment is denied. Union Pacific has failed to meet its burden to show it is entitled to judgement as a matter of law with regard to Plaintiff's claim of negligence in Count I.

3.    Negligence as to Amtrak

Amtrak moves for summary judgment as to Count III, which is also a claim of negligence. Plaintiff alleges the crossing was dangerous in that the views were obstructed by overgrown vegetation, rendering it "impossible" for Plaintiff and the oncoming train's engineer to see one another.  (ECF No. 32 at 7).  Plaintiff alleges that Amtrak knew the crossing was dangerous, and was negligent in failing to remove or warn of the dangerous condition, maintain the right-of-way in a safe and reasonable manner, and ensure there were no unobstructed sight lines at the grade crossing.  Plaintiff also alleges Amtrak was negligent in failing to issue slow orders, and that the train was traveling at a speed too fast for the conditions.  Plaintiff further alleges that Amtrak failed to sound the train's horn in a timely and safe manner to allow Plaintiff a meaningful opportunity to avoid the collision.

a.    *Excess speed*

Like Union Pacific, Amtrak argues that any claim of negligence based on theories that it failed to issue slow orders, or that the train was traveling at excess speed, is preempted by federal

law.  Plaintiff concedes this argument, and the Court dismisses any claim of negligence against Amtrak related to slow orders or the speed of the train.

b.   <i>Maintenance and signaling</i>

Amtrak next argues Plaintiff cannot bring claims against it related to maintenance and signaling.  Amtrak asserts that it operates over Union Pacific tracks pursuant to an operating agreement, and has no responsibility for maintenance, signals, and upgrades. Therefore, Amtrak argues, it cannot be held liable for negligence based on the conditions or characteristics of the track.

Plaintiff responds that Amtrak's argument is unsupported by evidence, such as the operating agreement between Amtrak and Union Pacific.  Plaintiff further contends that Amtrak's argument is contrary to Missouri law.  Plaintiff states the Missouri Supreme Court has held that train operators leasing track can be held liable for the conditions of the track, citing Flint v. Chicago, Burlington & Quincy Railroad Co., 207 S.W.2d 474 (Mo. 1947). Plaintiff argues that a lessee who uses track is liable as if it owned the track.

In Flint, a case with claims of negligence based on a collision between a truck and a passenger train, the Missouri Supreme Court wrote the following:

> [Defendant Chicago, Burlington & Quincy Railroad Company] further contends that there is nothing to show that defendant knew of the existence of obstructions at this crossing because it did not own, operate or maintain either the crossing or the tracks over which the train was operated. There is enough in the evidence to show that defendant operated its train over the line of the Chicago and Alton, using Chicago and Alton engine crews from Mexico west. The engineer and fireman did know this line and the Chicago and Alton section men maintained the tracks and the crossing. We think [Missouri Revised Statutes § 388.310], is broad enough to cover this kind of a situation so that under its terms defendant is liable, as lessee or licensee, "in the same manner, as if operating its own road."[6]

---

[6]Section 388.310 provides, in relevant part, as follows:

And whenever any such railroad [ ] shall lease its road or tracks or any part thereof to any other company or corporation, or shall license or permit any other company

24

Id. at 480 (citing Mo. Rev. Stat. § 388.310).

Here, Amtrak asserts it leases or has a license to use Union Pacific track, although it failed to submit evidence of its operating agreement.  If the Court were to accept this assertion as established, there is also evidence in the record that Amtrak's crew was very familiar with the stretch of track near North Oak Road crossing.  Based on the above authority, the Court concludes Amtrak may be held liable under Missouri law for the maintenance and condition of the track at the North Oak Road crossing.

In its Reply, Amtrak does not address the Missouri Supreme Court's decision in Flint or § 388.310.  Instead, it asserts that "Plaintiff's argument demonstrates a fundamental misunderstanding as to how freight railroad and passenger railroads interact."  (ECF No. 70 at 2).  It states in a conclusory manner that "[w]hen passenger railroads, such as Amtrak, operate on freight tracks, [ ] an agreement is reached between the parties which allows Amtrak to use the track.  As part of that agreement, the freight railroad retains responsibility for maintenance of the track because they maintain the track for their own freight rail traffic.  Freight railroads do not place any additional duty upon Amtrak in regard to any condition at any crossing."  (Id.)

---

or corporation, under any running agreement, to run cars, engines or rolling stock upon its road or track, in this state, the company or corporation so leasing its road, or such part thereof, to such other company or corporation, or so licensing or permitting the use of its road or track by such other company or corporation, shall remain liable for all acts, debts, claims, demands, judgments and liabilities of the lessee or licensee [ ] the same as if it (the lessor or licensor) operated the road, or such part thereof, itself; and such lessee or licensee shall likewise be held liable and may sue and be sued in all cases and for the same causes, and in the same manner, as if operating its own road; provided, however, that a satisfaction in full of any claim or judgment by either of such corporation or company shall discharge the other.

Mo. Rev. Stat. § 388.310 (emphasis added).

Amtrak provides no citations to evidence in the record or to legal authorities in support of these statements and, therefore, the Court will not consider them for purposes of deciding its Motion for Summary Judgment. "Unsworn arguments [by counsel] are not evidence," Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 804 (8th Cir. 2006), and the Court declines to consider argument that is unsupported by citations to legal authorities. See United States v. Wadlington, 233 F.3d 1067, 1081 (8th Cir. 2000).

Amtrak did attach to its Reply the affidavit of Jared Treaster, a manager of track maintenance at Union Pacific, who attests that Amtrak "has no responsibility for the maintenance, upkeep, or signalization of the crossing in question." (ECF No. 70, Ex. 1 at 1). Mr. Treaster avers that he has "responsibility for Desoto Subdivision, which includes the crossing in this case." (Id.) Mr. Treaster provides no other details regarding the basis for his assertion that Amtrak is not responsible for crossing safety or maintenance, however. Even if the Court were to consider the conclusory affidavit submitted with Amtrak's Reply, this evidence goes to the relationship between Amtrak and Union Pacific, not to the duty Amtrak owes Plaintiff under Missouri law. Amtrak fails to meet its burden of showing that it is entitled to summary judgment as to Plaintiff's negligence claim based on Amtrak's alleged failure to remove or warn of the dangerous condition, maintain the right of way in a safe and reasonable manner, and ensure there were no unobstructed sight lines at the grade crossing.

<em>c.     Duty to sound warning</em>

Finally, Amtrak moves for summary judgment on the ground that it had no duty to sound a warning when it approached the North Oak Road crossing, because it is a private railroad crossing. Amtrak further contends the undisputed evidence establishes that the Amtrak train did in fact sound a horn before the collision and, therefore, it is entitled to summary judgment on this theory of negligence.

In Missouri, train operators are under a statutory duty to sound a warning when approaching a public crossing. See Mo. Rev. Stat. § 389.990.  As discussed above, North Oak Road crossing is not a public crossing, and therefore § 389.990 does not apply.  However, courts in Missouri have recognized there is "a common law duty to give such warnings, in excess of those required by statute, as are warranted in the exercise of ordinary care under the circumstances." Koehler v. Burlington N., Inc., 573 S.W.2d 938, 943 (Mo. Ct. App. 1978) (citing Williams v. Thompson, 166 S.W.2d 785 (Mo. Ct. App. 1942)). "Where the particular crossing is more hazardous than ordinary because it is heavily travelled or its terrain is such that motorists' line of sight down the track is obstructed, it is a jury question whether the railroad has met its duty of due care to give adequate warning of the approach of its trains." Id. See also Honeycutt, 440 S.W.2d at 485 ("a railroad is bound to exercise reasonable care in the operation of its train and to avoid injury to persons and animals at all crossings, private as well as public; and if by reason of peculiar or extraordinary circumstances surrounding a crossing and known to the trainmen, ordinary prudence would require an alarm or signal to be given by an approaching train, then its omission is negligence. The question is one for the jury to determine on common law principles.") (quotation and citation omitted) (emphasis added).

In support of its argument that there is no duty to sound a horn on the approach to a private crossing, Amtrak cites to Flint, 207 S.W.2d 474.  The Court, however, finds the holding in the case to be more nuanced than Amtrak suggests.  In Flint, the collision between the train and truck occurred at a crossing that was considered private. Id. at 475. But in light of certain characteristics of the crossing—for example, the fact that the gravel lane provided access to more than one farm, the lane was open and not gated, and the crossing had been there for more than 60 years—the Missouri Supreme Court found "[the] evidence was sufficient to make a jury issue on public use of this crossing sufficient to impose a common law duty to warn under the circumstances of this

case." Id. at 479.  Based on this authority, the Court find that under Missouri common law, a railroad may be under a duty to sound a warning on an approach to a private crossing when the crossing has some characteristics of a public crossing.  Id. See also Gulf, M. & O. R. Co. v. Thornton, 294 F.2d 104, 108 (8th Cir. 1961) (affirming verdict where the jury was charged with determining whether a private crossing had characteristics sufficiently like a public crossing such that train was under duty to blow its horn or whistle in advance).

Here, the Court agrees with Plaintiff that characteristics about the North Oak Road crossing create a question for the jury to determine whether the crossing is sufficiently like a public crossing that Amtrak had a common law duty to sound a warning on its approach.  For example, there is evidence in the record that there are multiple residences on the private road, the crossing is open with no gate, and the railroad has maintained the crossing for many years.  Flint, 207 S.W.2d at 475; Gulf, M. & O. R. Co., 294 F.2d at 108 (finding submissible jury issue where there was evidence that private road connected to farm, the road was used by family, visitors, stock trucks, and pipeline workers, and the railroad had repaired and maintained the crossing for decades).  There are also jury issues as to whether certain characteristics of the North Oak Road crossing—such as sight lines and the grade of the road and slope of the crossing—made the crossing unusually dangerous such that Amtrak was under a duty to take additional precautions, such as sounding the horn on the approach.  See Honeycutt, 440 S.W.2d at 485.

As for Amtrak's assertion that the engineer did sound the horn, it is undisputed that the horn was sounded prior to impact.  But the Court finds there remain disputes of fact as to whether the horn was timely and adequate under the circumstances.  In sum, Amtrak has not shown that it is entitled to summary judgment as to Plaintiff's claim that Amtrak failed to sound the train's horn in a timely and safe manner to allow Plaintiff a meaningful opportunity to avoid the collision. Amtrak's motion for summary judgment is denied.

## *IV.  Conclusion*

For the reasons set out above, the Court grants in part and denies in part Defendants' Motion to Exclude or Limit the testimony of James Loumiet.  Mr. Loumiet will not be allowed to testify that Union Pacific violated § 389.665(2), Mo. Rev. Stat., because the crossing at issue in this case is not a public crossing within the meaning of the statute.  In all other respects, Defendants' motion is denied, and Mr. Loumiet will be allowed to offer his opinions at trial.

As for Union Pacific's Motion for Summary Judgment, the Court finds Union Pacific has shown it is entitled to judgment as a matter of law on Plaintiff's claim of negligence per se based on alleged violations of § 389.665(2), Mo. Rev. Stat.  Union Pacific is also entitled to summary judgment on any claim of negligence based on its alleged failure to issue slow orders, as Plaintiff concedes his state law claim of negligence based on the train's speed is preempted by federal law. For the same reason, Amtrak is entitled to summary judgment on any claim of negligence based on its alleged failure to issue slow order and/or travel at a safe speed.  In all other respects, Union Pacific's and Amtrak's Motions for Summary Judgment are denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Union Pacific Railroad Company and National Railroad Passenger Corporation's Motion to Exclude or Limit the Testimony of Plaintiff's Expert James Loumiet is **GRANTED in part** and **DENIED in part**.  Consistent with this Memorandum and Order, the motion is **GRANTED** to the extent that James Loumiet will be precluded from offering testimony that Union Pacific Railroad Company violated § 389.665(2), Mo. Rev. Stat.  In all other respects, the motion is **DENIED.**   [ECF No. 56]

**IT IS FURTHER ORDERED** that Defendant Union Pacific Railroad Company's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.  Consistent with this Memorandum and Order, the motion is **GRANTED** to the extent that Union Pacific Railroad

Company is entitled to summary judgment on Count I of Plaintiff's Second Amended Complaint for negligence per se and any claim of negligence in Count II based on its alleged failure to issue slow orders.  In all other respects, the motion is **DENIED.**  [ECF No. 61]

       **IT IS FURTHER ORDERED** that Defendant National Railroad Passenger Corporation's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.  Consistent with this Memorandum and Order, the motion is **GRANTED** to the extent that National Railroad Passenger Corporation is entitled to summary judgment on any claim of negligence in Count II of Plaintiff's Second Amended Complaint based on its alleged failure to issue slow orders and/or to travel at a safe speed.  In all other respects, the motion is **DENIED**.  [ECF No. 58]


_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this  _30th_  day of May 2024.